IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

18 - 3 5 3 7 JMC

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH AND SEIZURE OF CERTAIN ELECTRONIC MEDIA** | Case No. _____ <br><br> **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

1.      I, Special Agent Matthew Carey, of the Federal Bureau of Investigation ("FBI"), being first duly sworn, do hereby depose and states as follows:

2.      I make this affidavit to apply for search and seizure warrants for six cellular telephones and one USB thumb drive, as listed below and described in Attachment A.

- **Target Telephone 1** is a cellular telephone that was seized from Waymond RICHARD incident to his state arrest.

- **Target Telephone 2** is a cellular telephone that was seized from Devron TOWSON incident to his federal arrest.

- **Target Telephone 3** is a cellular telephone that was seized from Malik CAUTHORNE incident to his federal arrest.

- **Target Telephone 4** is a cellular telephone that was seized from Kenneth JONES incident to his federal arrest.

- **Target Telephone 5 and 6** are cellular telephones that were seized from Yaunike HILTON-BEY incident to his federal arrest. The **Black USB thumb drive** was seized from Yaunike HILTON-BEY.

| TARGET TELEPHONES | IDENTIFYING NO. | LOCATION SEIZED |
|---|---|---|
| **Target Telephone 1:** Apple iPhone Model A1660 | FCC IDBLG-E3085A | Arrest of Waymond RICHARD |
| **Target Telephone 2:** LG Model SP320 | IMEI: 35822608593563 | From Devron TOWSON's person |

18 - 3 5 3 7 JMC

| Target Telephone 3: Apple iPhone Product Red | IMEI: 356084090884911 | From Malik CAUTHORNE's person |
| Target Telephone 4 : Motorola XT1765 | IMEI: 355674081486691 | From Kenneth JONES' person |
| Target Telephone 5: Alcatel Blu | S/N: 014892003802000 | From Yaunike HILTON-BEY's person |
| Target Telephone 6: Apple iPhone Model A1549 | FCC ID: BCGE2816A | From Yaunike HILTON-BEY's person |
| Black USB thumb drive | ECMMD16G405M1XD | From Yaunike HILTON-BEY's person |

(collectively, the "**Target Electronic Media**").

2.      I am an "investigative or law enforcement officer . . . of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a duly sworn member of the FBI and have been so employed since August 21, 2016. I am currently assigned to the Baltimore Division of the FBI, Safe Streets Task Force, in Baltimore, Maryland. I have set forth only the facts I believe are necessary to establish probable cause. I base the information contained in this Affidavit on my review of reports and documents, and interviews with witnesses and other law enforcement officers.

3.      As set forth below, I submit that there is probable cause to believe that the information sought through this search warrant will uncover evidence, fruits, and/or instrumentalities relating to violations of federal criminal offenses, including: possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841; and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.

### AFFIANT BACKGROUND

4.      Your affiant, Special Agent Matthew Carey, is a Special Agent with the Federal Bureau of Investigation (FBI) and has been so employed since 2016. I have authored, executed, and/or participated in approximately ten search and seizure warrants for illegal narcotics and

18 - 3 5 3 7 JMC

related paraphernalia. Additionally, I have assisted in the execution of a federal Title III orders. I am currently assigned to investigate violent gangs in the Baltimore area as a member of the FBI's Safe Streets Task Force. I have worked for three months on the FBI Baltimore Division's surveillance operations group, following several individuals involved in narcotics trafficking within Baltimore City, and the greater Baltimore area. I have been the affiant on multiple search warrants and tracking warrants for drug trafficking organization cases.

5.      With respect to drug trafficking investigations in particular, I have worked directly with confidential sources and informants to conduct controlled purchases of controlled dangerous substances.  During these investigations, I have performed duties associated with electronic surveillance including, but not limited to, monitoring intercepted telephone calls, conducting surveillance, and transcribing those same conversations. I have listened to numerous intercepted communications between individuals involved in or suspected to be involved in the distribution of controlled dangerous substances.  As a result of these investigations, I also have extensive experience in debriefing defendants, informants, participants and various persons directly involved in buying and distributing controlled dangerous substances and have become familiar with the language and terminology used by those persons, the prices of controlled dangerous substances and the packaging used to distribute these substances, and the organizational structure of enterprises that traffic in controlled dangerous substances. I also have become familiar with the use of wire and electronic communication devices by drug traffickers, the patterns of activity of drug traffickers, and the methods, language and terms that are used by drug traffickers to disguise drug trafficking and the source and nature of the profits they earn from their illegal activities.

6.      Through training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of

18 - 3 5 3 7 JMC

firearms in connection with trafficking of such drugs, and the methods by which narcotics traffickers collect, store and conceal the proceeds of their illegal activities. I have also become familiar with the manner in which narcotics traffickers and gang members use telephones, cellular telephone technology, pagers, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations. During my time in law enforcement, I have learned the following:

   a. Persons involved in the illegal distribution of controlled substances keep and maintain records of their various activities. Experience in similar cases has established that such records are regularly concealed in a suspect's automobile, residence, office, and on his person, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. The aforementioned items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their person, where they have ready access to them. I know that drug traffickers often have several residences decreasing the likelihood of detection by law enforcement;

18 - 3 5 3 7 JMC

b.  Persons involved in the illicit distribution of controlled substances, due to advancement in technology, may be utilizing computers, cellular telephones (smart phones) or other electronic storage media to store the records listed above;

c.  I also know, based on training and experience, that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and to finance their ongoing narcotics business. Based on training and experience I know that persons involved in large scale drug trafficking conceal in their residences currency, financial instruments, and evidence of financial transactions relating to narcotics trafficking activities;

d.  Persons involved in the illicit distribution of controlled substances utilize cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. The electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship between these individuals;

e.  Persons involved in the illicit distribution of controlled substances take or cause to be taken photographs of themselves, their associates, their property and their product. These traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person; and

f.  I know, based on training and experience that drug traffickers commonly have in their possession, that is, on their person, in their residences and/or businesses, firearms and other weapons. Said firearms and weapons are used by the traffickers to protect and secure their large amounts of narcotics and United States currency

5

18 - 3 5 3 7 JMC

from loss to law enforcement agents or other members of the criminal element that are motivated by greed.

10. I know from my training and experience that cellular phones are a vital instrument of drug traffickers, and that these phones contain various items of evidentiary value. The phones of traffickers often store contact information (including phone numbers) of customers, coconspirators, suppliers, and other members of the conspiracy. These phones often also contain the substance (i.e. text messages) of the communications between drug trafficking conspirators, which is critical evidence in any investigation. In addition to the communications between drug traffickers, cellular telephones can yield evidence of videos or photographs of controlled substances, firearms, coconspirators, meeting locations, and other evidence. Cellular telephones can also store evidence of location information of the phone and its user. Cellular telephones can also contain information about the phone itself, including the number, IMEI designation, associated e-mail addresses, and other information about its use.

11. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6

# 18 - 3 5 3 7 JMC

## PROBABLE CAUSE

12.     In or around January 2018, the FBI began an investigation of a violent drug trafficking organization (DTO) involved in selling heroin and/or Fentanyl at a "drug shop" located in the area of West Pratt and South Calhoun Streets in west Baltimore City, Maryland. Heroin/Fentanyl drug shops in Baltimore City are typically given a name, which is also the "brand" name given to the heroin/Fentanyl. The names are given to the heroin/Fentanyl in order for the customers to know where to purchase specific heroin/Fentanyl that they believe is good quality.

13.     Based on interception of jail calls, information from confidential sources, physical and video surveillances, and controlled purchases, I believe the drug shop run by the DTO that operates in the vicinity of the intersection of West Pratt and South Calhoun Streets distributes heroin and/or Fentanyl. Throughout the course of the investigation, law enforcement officers identified WAYMOND RICHARD a/k/a "SQUIRT," Calvin MATTHEWS a/k/a "BILLY," Shanee BURTWELL, Devron TOWSON, Kenneth JONES, Malik CAUTHORNE, Yaunike HILTON-BEY and others as individuals believed to be members of this DTO.

### *Hand-to-Hand Transactions*

14.     From January to June 2018, the FBI has conducted video surveillances showing several members of the DTO to include RICHARD, CAUTHORNE, HILTON-BEY, JONES and TOWSON conducting hand to hand narcotics transactions in the area of the 1400 block of Kuper Street. The video footage spans months and captures in clear detail the users of the **Target Electronic Media** and others members of the DTO repeatedly supplying customers with suspected narcotics (as evidenced by the gel capsules and vials) throughout the time period above, and shows their faces in clear detail as well.

### *Controlled Purchases*

7

18 - 3 5 3 7 JMC

15.    As detailed above, I am seeking warrants for phones and media used by five different members of the DTO. The CS is a registered FBI confidential source who has provided information to the FBI at various time periods since 2009. The CS has a criminal history and is being monetarily compensated for his/her cooperation. The CS purchased gel capsules of suspected narcotics from members of the DTO in and around the 1400 block of Kuper Street. Two of the controlled purchases were from JONES (February 2, 2018; May 5, 2018). One of the controlled purchases was from HILTON-BEY (February 7, 2018). On May 9, 2018, the CS purchased Fentanyl from TOWSON. Laboratory results of gel capsules purchased during three of the controlled purchases, including the May 9, 2018 purchase from TOWSON, tested positive for Fentanyl.

### Confidential Sources

16.    The FBI has spoken with no less than four confidential sources (CS-A – CS-D), who are cooperating in exchange for leniency on pending criminal charges, and who collectively confirm that RICHARD, CAUTHORNE, JONES, TOWSON, and HILTON-BEY comprise a larger drug trafficking organization that sold heroin and Fentanyl over the course of late 2017 to mid 2018. While these individuals have criminal arrests and convictions, there information corroborates other evidence summarized above and below.

17.    These confidential sources have explained in detail the operation of the drug trafficking organization and identified RICHARD as occupying a leadership role in the day-to-day activities. In addition, these confidential sources collectively have identified by appearance and/or name the remaining users of the **Target Electronic Media** as individual hitters (i.e. distributors) for the DTO.

### Historical Arrests

8

18 - 3 5 3 7 JMC

18.     The FBI has also reviewed the criminal histories of the Target Subjects, to include RICHARD, CAUTHORNE, JONES, TOWSON, and HILTON-BEY. Based upon that review, I am aware of multiple previous drug trafficking arrests or convictions for the users of the **Target Electronic Media**.

### Previous Search Warrants

19.     Based on the probable cause summarized above, United States Magistrate Judges have authorized several search and tracking warrants for the users of the **Target Electronic Media**. *See, e.g.*, Misc. No. 18-1934-ADC (social media warrant for users including HILTON-BEY); 18-2286-SAG (tracking warrant for phone used by RICHARD). The FBI has obtained valuable information from these warrants, including social media content demonstrating what I believe to be evidence of association with the DTO among the users of the **Target Electronic Media**. *See* Attachments C-D.

### Federal Indictment

20.     On September 5, 2018, nineteen individuals including TOWSON, JONES, CAUTHORNE, HILTON-BEY and RICHARD were federally indicted for conspiracy to sell heroin (Crim. No. RDB-18-0339). As a result, a Federal Arrest warrants were issued for those subjects.

### (Target Telephone 1)

21.     On September 2, 2018, BPD Officers located Waymond RICHARD on the 100 block of South Carey Street. BPD Officers were aware that RICHARD had an open arrest warrant at that time. BPD Officers attempted to make contact with RICHARD. RICHARD fled the area on foot. RICHARD was located at an abandoned garage behind the 100 block of South Stockton Street. RICHARD was placed under arrest. While Officers were walking RICHARD to the car, RICHARD grabbed a black iPhone (**Target Telephone 1**) from his back pocket and attempted to

18 - 3 5 3 7 JMC

throw it in the crowd. The phone was recovered by the officers. A search incident to arrest of RICHARD resulted in the recovery of a clear tied bag containing three pink flip top containers containing tan powdery substance and 14 white top glass vials containing a white powdery substance.

22.    I believe RICHARD is a member of the DTO, and that a search of **Target Telephone 1** will reveal evidence of the drug trafficking conspiracy.

*(Target Telephone 2)*

23.    On September 12, 2018, TOWSON was arrested by Baltimore City Police Officers pursuant to the federal arrest warrant in the 100 block of South Carey Street in Baltimore, Maryland. BPD Officers searched TOWSON incident to arrest and recovered a single key with the word Nissan on it and a black LG cellular telephone (**Target Telephone 2**). A subsequent search warrant on this vehicle resulted in the recovery of two firearms.

24.    I believe TOWSON is a member of the DTO, and that a search of **Target Telephone 2** will reveal evidence of the drug trafficking conspiracy.

*(Target Telephone 3)*

25.    On October 3, 2018, Malik CAUTHORNE was arrested by Baltimore City Police Officers pursuant to the federal arrest warrant at 1633 Locust Avenue in Baltimore, Maryland. BPD Officers searched CAUTHORNE incident to arrest and recovered an iPhone Product Red cellular telephone (**Target Telephone 3**).

26.    I believe CAUTHORNE is a member of the DTO, and that a search of **Target Telephone 3** will reveal evidence of the drug trafficking conspiracy.

*(Target Telephone 4)*

27.    On October 4, 2018, Kenneth JONES was arrested by Baltimore City Police Officers pursuant to the federal arrest warrant in the 100 block of South Carey Street in Baltimore,

18 - 3 5 3 7 JMC

Maryland. BPD Officers searched Kenneth JONES incident to arrest and recovered a gold Motorola cellular telephone (**Target Telephone 4**).

28.      I believe Kenneth JONES is a member of the DTO, and that a search of **Target Telephone 4** will reveal evidence of the drug trafficking conspiracy.

### *(Target Telephones 5 and 6)*

29.      On October 24 2018, Yaunike HILTON-BEY was detained by Baltimore City Police Officers during the execution of a state search and seizure warrant at 4917 Park Heights Avenue, Baltimore, Maryland. HILTON-BEY was taken to the Northwest District Police Station pursuant to his federal arrest warrant in this investigation. BPD Officers searched HILTON-BEY incident to arrest an Alcatel Blu cell phone and an iPhone (**Target Telephones 5** and **6**). The FBI was contacted and HILTON-BEY was transported to the United States Courthouse for his initial appearance. Upon arrival to the United States Courthouse, HILTON-BEY was searched by the United States Marshals Service at which time a **black USB Thumb Drive** was located on his person.

30.      I believe HILTON-BEY is a member of the DTO, and that a search of **Target Telephones 5-6** and the **black USB Thumb Drive** will reveal evidence of the drug trafficking conspiracy.

31.      While the seizure of these cellular phones and media occurred weeks after the federal indictment and arrest warrants, I still believe that the **Target Electronic Media** contain evidence of the drug trafficking (21 U.S.C. § 841) and drug trafficking conspiracy (21 U.S.C. § 846) that occurred months earlier and observed by the FBI. For starters, I know from training and experience that much of the valuable evidence stored on cellular phones (summarized above) will remain even after drug traffickers stop their criminal activity. Additionally, I know that drug trafficking is an ongoing and continuous activity that does not cease at a particular moment, as

11

**18 - 3 5 3 7 JMC**

evidenced in this case where RICHARD (narcotics) and TOWSON (firearms) were found with contraband during or after their arrest.   There is also no better indication of the existence of evidence on this media than the fact that a United States Magistrate Judge (Coulson, J.) previously authorized a search warrant for other phones used by other DTO members, and the FBI recovered valuable evidence that preceded the date and time of the recovery of the phones. *See* Misc. No. 18-2129-JMC.

32.   I therefore submit that a search of the **Target Electronic Media** will reveal evidence of a crime.  As described above, I know based on my training, knowledge and expertise that drug traffickers often use multiple telephones and other electronic media to communicate with their suppliers and customers and to facilitate drug transactions. I know that persons engaged in illegal activities use various forms of electronic media to include cell phones to coordinate with fellow members. As explained above, I believe that RICHARD, JONES, HILTON-BEY, CAUTHORNE and TOWSON were engaged in a drug trafficking conspiracy.   I believe RICHARD, JONES, HILTON-BEY, CAUTHORNE and TOWSON use cellular telephones and other electronic media and electronic media storage devices in furtherance of these criminal activities. Moreover, the electronically stored information on these devices is of evidentiary value in proving the drug trafficking activities of RICHARD, JONES, HILTON-BEY, CAUTHORNE and TOWSON, in identifying other members of the conspiracy, in establishing the relationship between these individuals, and identifying further drug customers and suppliers.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS OF TARGET PHONES**

33.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the

12

18 - 3 5 3 7 JMC

internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

34.     As further described in Attachment B to the warrant authorizing the search of the above listed cellular telephones, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer

**18 - 3 5 3 7 JMC**

and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

2.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

3.    As a result of the above investigation, there is probable cause to believe that the above listed digital evidence contains evidence, fruits and instrumentalities of drug trafficking in violation of 21 U.S.C. § 841; and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.

4.    WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a search and seizure warrant for the above listed **Target Electronic Media** which is also more fully described in Attachment A, for the items described in Attachment B and according to the protocols set forth therein.

Special Agent Matthew Carey
Federal Bureau of Investigation

Sworn to before me this _____ day of December, 2018

14

18 - 3 5 3 7 JMC

_____

The Honorable J. Mark Coulson
United States Magistrate Judge